# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| BRIAN T LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00230-RK |
| | ) | |
| (1) JACKSON COUNTY, MISSOURI; | ) | |
| | ) | |
| (2) JOSEPH PICCININI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS FORMER DIRECTOR JACKSON COUNTY DETENTION CENTER; | ) | |
| | ) | |
| (3) SEBASTINE U OKOLO, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | ) | |
| | ) | |
| (4) LEA HENDERSON, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; | ) | |
| | ) | |
| (5) JOHN DOE #1, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | ) | |
| | ) | |
| (6) JANE DOE #1, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; | ) | |
| | ) | |
| (7) JOHN DOE #2, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; | ) | |
| | ) | |
| (8) JANE DOE #2, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; | ) | |
| | ) | |
| (9) JOHN DOE #3, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND | ) | |
| | ) | |
| (10) JANE DOE #3, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

Before the Court is Defendants Jackson County, Missouri; Joseph Piccinini; Sebastine U. Okolo; and Lea Henderson's motion to dismiss Counts I, II and III of Plaintiff's amended petition. (Doc. 18.) The motion is fully briefed. (Docs. 19, 22, 26.) After careful consideration, and for the reasons below, Defendants' motion to dismiss is **GRANTED in part** and **DENIED** in part.

## I. Background

In an amended petition filed July 7, 2021 (Doc. 14), Plaintiff brings several claims under 42 U.S.C. § 1983, alleging his constitutional rights were violated while he was held as a pre-trial detainee at the Jackson County Detention Center ("JCDC") from approximately December 21, 2015, through January 22, 2018.

Defendant Jackson County owns and operates JCDC. (*Id.* at ¶ 4.) Defendant Joseph Piccinini was appointed acting director of the Jackson County Department of Corrections in June 2015. (*Id.* at ¶ 25.) Defendant Sebastine Okolo was a corrections officer at JCDC (*id.* at ¶ 6), and Lieutenant Lea S. Henderson was an officer/supervisor at JCDC while Plaintiff was held at JCDC. (*Id.* at ¶ 8.)

Plaintiff alleges various problems and deficiencies with the detention center are well known and persistent. In particular, Plaintiff alleges on October 29, 2015, a Jackson County Department of Corrections Task Force issued its report finding that various problems at the JCDC facility were caused by the facility's lack of accreditation and the low salaries paid to JCDC corrections officers, and that more funding is needed to upgrade and repair the detention facility. (*Id.* at ¶¶ 24, 26-33; *see* Doc. 14-2.) Additionally, Plaintiff alleges that on August 11, 2017, Jackson County convened a grand jury to investigate various problems at JCDC, and that the grand jury issued its report in May 2018. (Doc. 14 at ¶ 36; *see* Doc. 14-3.) Plaintiff alleges the grand jury report found deficiencies in the management of the facility's budget; general staffing and training of corrections officers; and a failure to clean and maintain the overcrowded facility, among other issues. (Doc. 14 at ¶¶ 36-72.) Plaintiff alleges the Jackson County task force and grand jury reports "clearly show that mismanagement of the funds allotted to the Jail resulted in poorly paid and poorly trained staff." (*Id.* at ¶ 73.)

Plaintiff alleges on February 8, 2016, he was housed in cell number 8 in Pod J3F at JCDC, having arrived a few days earlier. (*Id.* at ¶¶ 19, 79, 80.) Officer Okolo knew Plaintiff had been charged with offenses involving child molestation and incest, and called Plaintiff a "Baby-Raper"

in the presence of other detainees in the pod. (*Id.* at ¶ 81.) Plaintiff alleges one of those other detainees housed in the pod called a relative who worked for JCDC and confirmed with that relative that Plaintiff had in fact been charged with such offenses. (*Id.* at ¶ 84.) Plaintiff then alleges "various inmates/detainees" used a plastic tool to open their own locked cell doors, other inmates' locked cell doors, and Plaintiff's locked cell door on two occasions on February 8, 2016, attacking him. (*Id.* at ¶ 95.) First, he was punched in the head by another inmate housed in Pod J3F. (*Id.* at ¶ 85.) Plaintiff requested assistance, resulting in the deployment of the "CERT team" to restore order in the pod. (*Id.* at ¶ 86.) Plaintiff alleges he "requested assistance from the JCDC staff on duty" and asked to be moved to a different pod. (*Id.* at ¶ 87.) Plaintiff's request was denied. (*Id.* at ¶ 88.) Plaintiff then alleges he was attacked a second time that day while he was in his own locked cell. (*Id.* at ¶ 89.) Plaintiff alleges the inmates/detainees "pulled their shirts over their faces" and physically and sexually assaulted him inside his cell. (*Id.* at ¶¶ 96-98.) Plaintiff lost consciousness during the assault, which occurred "sometime between 2100 and 2300 hours" (between 9:00 PM and 11:00 PM). (*Id.* at ¶¶ 99, 100.) The inmates/detainees placed a blanket over the railing to hide the attack on Plaintiff in his cell from video surveillance. (*Id.* at ¶ 103.) Only a portion of the attack was captured on video. (*Id.* at ¶ 106.)

JCDC personnel discovered Plaintiff's injuries later that night when they performed a bed check and noticed Plaintiff's face was swollen. (*Id.* at ¶¶ 101, 104.) Plaintiff was admitted to Truman Medical Center for medical treatment. (*Id.* at ¶ 102.) Plaintiff alleges that following the attack he was seen by JCDC medical staff at least eight separate times for pain, anxiety, flashbacks, depression, and for help with mental issues. (*Id.* at ¶ 111.)

The tool used to access Plaintiffs' locked cell was a "six (6) inch long by 2 (two) inches wide, piece of plastic [resembling a piece of a broom handle or a spoon]" other detainees used to "pry open any and all of the locked cell doors, anytime [they] wanted." (*Id.* at ¶¶ 90, 91.) Plaintiff alleges this plastic tool was "kept in the Pod area, on the television, available for access by all the inmates/detainees." (*Id.* at ¶ 92.)

Plaintiff asserts several claims under § 1983 for violations of his constitutional rights:

- Count I (brought against all Defendants): Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights to be free from cruel and unusual punishment were violated based on the conditions of the JCDC facility during Plaintiff's pre-trial confinement from February 8, 2016, through January 22, 2018;

3

- Count II (brought against Jackson County and Director Piccinini): Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights were violated by Defendant's failure to adequately staff and train JCDC personnel resulting in the February 8, 2016, assaults; and

- Count III (brought against Officer Okolo; Officer Lewis; Lieutenant Henderson; John Does #1, #2, and #3; and Jane Does #1, #2, and #3): Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights were violated by Defendants' failure to intervene and protect Plaintiff regarding the February 8 assaults.

(*Id.* at 21-32.)[1]

Defendants Jackson County, Director Piccinini, Officer Okolo, and Lieutenant Henderson move to dismiss Plaintiff's amended petition under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim under § 1983.

Further facts are set forth as necessary.

## II. Standard of Review

To survive a motion to dismiss, a petition must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a petition does not need to include detailed factual allegations, the petition must allege more than a sheer possibility that a defendant acted unlawfully to survive a motion to dismiss. *Wilson v. Ark. Dep't of Human Serv.*, 850 F.3d 368, 371 (8th Cir. 2017) (citation omitted). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (citation and quotation marks omitted). The Court need not accept as true "pleadings that . . . are no more than conclusions." *Iqbal*, 556 U.S. at 679.

---

[1] It is not clear whether Plaintiff brings this action against the individually named defendants in their official and individual capacities. In the caption of his brief, Plaintiff states each named defendant is sued in their "individual capacity." Plaintiff also alleges, however, each individual defendant's "acts and/or omissions were done individually and within the course and scope of his [or her] employment and/or agency as an employee of Defendant Jackson County." Defendants do not specifically address any official-capacity claims brought by Plaintiff against any Defendant in the instant motion to dismiss.

4

### III. Discussion

#### A. Plaintiff's Eighth Amendment Claim

Defendants first argue Plaintiff fails to state a claim under the Eighth Amendment because he was confined at JCDC as a pre-trial detainee rather than as a convicted inmate. Plaintiff does not oppose this argument. It is well-established that claims of constitutional violations by pre-trial detainees "are properly analyzed under the due process clause of the fourteenth amendment rather than the eighth amendment." *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Bordock v. City of Joplin, Mo.*, No. 04-5135-SW-RED, 2006 WL 744281, at *3 (W.D. Mo. Mar. 21, 2006) ("Generally, Plaintiff's status as a pre-trial detainee would place [him] outside of the protections of the Eighth Amendment proscription against cruel and unusual punishment, which applies only to convicted prisoners.") (citing *Hott v. Hennepin Cty.*, 260 F.3d 901, 905 (8th Cir. 2001)). Accordingly, Defendants' motion to dismiss is **GRANTED** to the extent the amended petition asserts any § 1983 claim for a violation of any rights secured by the Eighth Amendment.

#### B. Plaintiff's Conditions of Confinement Claim (Count I)

In Count I, Plaintiff asserts that his constitutional rights were violated by the conditions of his confinement at JCDC as a pre-trial detainee. Specifically, Plaintiff alleges Defendants "exposed [Plaintiff] . . . to dangerous physical defects and conditions . . . by failing to conduct proper maintenance and cleaning," resulting in "dangerous levels of filth and mold on a constant basis." Plaintiff alleges "[a]ll Defendants were responsible for the maintenance and administration of the JCDC premises" and that despite several complaints Plaintiff made "through the appropriate channels," the "filthy, mold infested conditions" continued. Plaintiff alleges Defendants received "repeated reports" of the conditions of JCDC by Plaintiff and others and by the reports that were issued by the Jackson County task force and grand jury which, Plaintiff alleges, "all Defendants had been specifically given, or had access to."

##### 1. Whether Plaintiff fails to state a claim based on the statute of limitations

Defendants argue they are entitled to dismissal because Plaintiff's claim is time-barred under the applicable statute of limitations. A Rule 12(b)(6) motion to dismiss based on the running of the statute of limitations is appropriate "when it appears from the face of the complaint itself that the limitation period has run." *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) (citation and quotation marks omitted). Because § 1983 does not itself prescribe a statute of limitations, the Court must apply the forum state's statute of limitations for the most analogous

5

cause of action. *See Myers v. Sander*, No. 4:13CV2192, 2014 WL 709081, at *15 (E.D. Mo. Feb. 3, 2014) ("courts should always use the forum state's statute of limitations," and the most applicable state cause of action for claims arising under 42 U.S.C. § 1981-1983 is the Missouri statute governing personal injury claims); *Wilson v. Garcia*, 471 U.S. 261, 276 (1985) (same). Missouri's five-year statute of limitations under RSMo § 516.120 supplies the statute of limitations as to Plaintiff's § 1983 claims here. *See Sulik v. Taney Cty., Mo.*, 393 F.3d 765, 767 (8th Cir. 2005).

Plaintiff filed his petition in state court on February 8, 2021 (Doc. 1-2.), and filed an amended petition on July 7, 2021. Defendants argue – and it appears Plaintiff concedes – any violations occurring five years before the commencement of this action (that is, before February 8, 2016) are time-barred.[2] Defendants argue "Plaintiff cites no facts to support any cause of action occurring after February 8, 2016 in his Amended Petition." The Court disagrees. Plaintiff alleges the "dangerous levels of filfth and mold" continued "on a constant basis" and that "during [Plaintiff]'s detention . . . from February 8, 2016, through and including January 22, 2018, [he] filed several complaints regarding these conditions" but the conditions persisted and were not addressed. Plaintiff's allegations regarding his conditions-of-confinement claim are continuous and on-going for the duration of his pre-trial detention at JCDC. Accordingly, Defendants' motion to dismiss Plaintiff's claim as time-barred is **GRANTED in part** and **DENIED in part**. Defendants' motion is granted to the extent Plaintiff asserts a conditions-of-confinement claim arising prior to February 8, 2016, and is otherwise denied.

### 2. Whether Plaintiff fails to state a constitutional claim

Under the Fourteenth Amendment, "[a]s a pretrial detainee, [Plaintiff] was entitled to at least as great protection as that afforded convicted prisoners under the Eighth Amendment." *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013) (citations and quotation marks omitted). A constitutional claim based on conditions of confinement arises under the Fourteenth Amendment if the conditions "amount to punishment." *Id.* (citation and quotation marks omitted); *see also Bell*

---

[2] Federal Rule of Civil Procedure 15(c) governs when an amended pleading "relates back to the date of the original pleading," such as when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Such appears to be the case here. In his original petition, Plaintiff asserted, among other claims, a conditions-of-confinement claim against all Defendants. (Doc. 1-2 at 12-13.) Thus, Defendants' suggestion that Plaintiff did not assert this constitutional claim in his original petition is misplaced.

*v. Wolfish*, 441 U.S. 520, 535 & 536-37 (1979) (due process means "a detainee may not be punished prior to" being found guilty and, therefore, pretrial detention conditions must not "amount to punishment, or otherwise violate the Constitution"). In the Eighth Circuit, courts look to the totality of the circumstances to determine whether the conditions amount to "unconstitutionally punitive" pretrial detention. *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010) (citation omitted). Furthermore, the Eighth Circuit has "repeatedly . . . applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates" in conditions-of-confinement claims brought by pre-trial detainees. *Id.* at 809 (citation and quotation marks omitted); *see also Frye v. Pettis Cty. Sheriff Dep't*, 41 F. App'x 906, 907 (8th Cir. 2002).

The deliberate indifference standard contains two components: an objective component and a subjective component. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). The objective component requires Plaintiff to "demonstrate he was confined in conditions that were sufficiently serious to pose a substantial risk of serious harm or [that] den[ied] him 'the minimal civilized measure of life's necessities.'" *Kingcade v. Holder*, No. 1:19-cv-165-NAB, 2020 WL 495131, at *2 (E.D. Mo. Jan. 30, 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (other citation omitted). The subjective component requires Plaintiff to plead facts that the "[d]efendants were deliberately indifferent to the risk of harm posed by those conditions." *Foster v. Andrews*, No. 4:17CV00748 JM/JTR, 2018 WL 1393528, at *1 (E.D. Ark. Mar. 20, 2018) (citation omitted), *adopted by* 2018 WL 1719710 (E.D. Ark. April 9, 2018); *see also Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014) (in applying the deliberate-indifference standard to a pre-trial detainee's failure-to-train claim against prison officials under the Fourteenth Amendment, the Eighth Circuit explained the subjective component requires proof the defendants "*personally knew* of the constitutional risk posed by their inadequate training or supervision").

In asserting a conditions-of-confinement claim, the underlying conditions must "'pose[] an unreasonable risk of serious damage to" Plaintiff's health or safety. *Kader v. Dooley*, No. 4:17-CV-04106-KES, 2019 WL 4227361, at *5 (D.S.D. Sept. 5, 2019) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). As the Eighth Circuit has explained, "the length of time a [detainee] is subjected to harsh conditions is a critical factor in our analysis. . . . Conditions such as a filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months." *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (finding pre-trial detainee's allegations he had to

7

endure raw sewage in his cell from an overflowed toilet for four days "do[es] not rise to a level of constitutional significance" where he alleged "he was 'made to endure the stench of [his] own feces and urine' for those four days"). The focus of this kind of conditions-of-confinement claim is "the length of [the pre-trial detainee's] exposure to unsanitary conditions and how unsanitary the conditions were." *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (citing *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994)).

Defendants argue Plaintiff fails to plead as a matter of law a constitutional claim. The Court disagrees. Taking as true the totality of Plaintiff's pleadings, the Court does not find Plaintiff fails to plead a constitutional claim as a matter of law. Plaintiff alleges the "areas where [he] was housed" during several months of pre-trial confinement (including the cell, latrine, shower area and kitchen) were "filthy [and] mold infested" and that these conditions persisted throughout his months-long pre-trial detainment despite various reports having been issued detailing on-going issues at JCDC and that Plaintiff (among others) complained multiple times about the conditions of the facility "through the appropriate channels." The Court does not find at this early stage and taking all pleaded facts as true and giving Plaintiff the benefit of all reasonable inferences, Plaintiff has failed to state a constitutional conditions-of-confinement claim. Therefore, Defendants' motion to dismiss for failure to state a constitutional conditions of confinement claim is **DENIED**.

### 3. Whether Plaintiff fails to state a claim against the individual defendants

Next, Defendants argue Plaintiff has failed to state a claim because "he has not alleged any conduct by Defendants [Piccinini, Henderson, and Okolo] violated a constitutional right."

To state a constitutional conditions-of-confinement claim against the individual defendants (other than Jackson County) under the deliberate-indifference standard, Plaintiff must allege "the officials knew of facts from which they could infer a substantial risk of serious harm existed and that the officials drew that inference." *Frye v. Pettis Cty. Sheriff Dep't*, 41 F. App'x 906, 908 (8th Cir. 2002) (citing *Perkins v. Grimes*, 161 F.3d 1127, 1130 (8th Cir. 1998)). Section 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and quotation marks omitted); *see also Hoffert v. Westendorl*, 854 F. App'x 93, 95 (8th Cir. 2021) (plaintiff must allege personal involvement of defendants in misconduct to state a § 1983 claim against a defendant in their individual capacity).

Here, Plaintiff alleges all defendants had been "given or had access to" both the grand jury and task force reports, that "all Defendant[s] . . . fail[ed] to conduct proper maintenance and cleaning to the structure itself," and that "[a]ll Defendants were responsible for the maintenance and administration of the JCDC premises." In addition, Plaintiff alleges he filed "several complaints regarding these conditions, through the appropriate channels" but that the conditions of the facility persisted and were not addressed.

These conclusory allegations are not sufficient to state a claim against the individual defendants. Plaintiff pleads no facts from which reasonable inferences can be drawn that Lieutenant Henderson or Officer Okolo, individually, are somehow responsible for the allegedly filthy and mold-infested conditions in the detention facility. *See Carter v. Blake*, No.4:05CV1992HEA, 2006 WL 568347, at *2 (E.D. Mo. Mar. 7, 2006) (granting dismissal of conditions-of-confinement claim because plaintiff failed to plead any facts the individual defendant had any authority over the allegedly unconstitutional conditions or had any personal involvement whatsoever), *aff'd*, 225 F. App'x 410 (8th Cir. 2007). Section 1983 liability against an individual is personal and requires more than the conclusory allegations Plaintiff has set forth here.

As to Director Piccinini, however, it is reasonable to infer, in his role, he would be aware of the conditions of the facility, particularly given Plaintiff's complaints "through the appropriate channels" of the conditions of the facility. *See also Ayers v. Jackson Cty., Mo.*, No. 4:17-CV-00187-DGK, 2017 WL 6045511, at *2-3 (W.D. Mo. Dec. 6, 2017) (citing *Howard v. Atkinson*, 887 F.2d 134, 138 (8th Cir. 1989)); *cf. Nelson v. Precythe*, No. 2:19CV19 HEA, 2019 WL 3997313, at *2 (E.D. Mo. Aug. 23, 2019) (dismissing case because plaintiff failed to state conditions-of-confinement claim against defendants based on their supervisory or administrative positions alone and alleged only the defendants "ha[ve] disregarded the health hazard of constant exposure to Mold, Fungus, Asbestos, and Dusty Ventilation systems.") (citing *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018). In this way, the Court does not find Plaintiff fails to state an individual claim against Director Piccinini.

Accordingly, Officer Okolo and Lieutenant Henderson's motion to dismiss Count I for failure to state a claim individually is **GRANTED** and Director Piccinini's motion to dismiss Count I for failure to state a claim against him individually is **DENIED**.

#### 4. Whether Plaintiff fails to state a claim against Jackson County

Finally, Defendant Jackson County argues Plaintiff has failed to plead facts to support a constitutional claim under the *Monell* standard for county liability. To properly plead a § 1983 claim against the county, Plaintiff must plead facts that plausibly show "a [county] policy or custom was the 'moving force [behind] the constitutional violation.'" *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)). A "policy" means "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* A "custom" in this context means (1) "[t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the government entity's employees" and (2) the policymaking officials are deliberately indifferent to such unconstitutional conduct or tacitly authorize such conduct after the officials have notice of the unconstitutional conduct. *Id.* (citation and quotation marks omitted); *see also Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014). Taking the facts pleaded in the amended petition as true, the Court does not find Plaintiff has failed to state a conditions-of-confinement claim against Jackson County. Plaintiff alleges the unconstitutional conditions of his pre-trial detention at JCDC were persistent, well-documented, and were not addressed despite Plaintiff and others making complaints through the ordinary process. The alleged persistence of the conditions throughout Plaintiff's months-long confinement, and considering a task force and grand jury investigation, provide a sufficient factual basis to plead this claim under the liberal pleading standard. Defendant Jackson County's motion to dismiss for failure to state a claim for *Monell* liability is **DENIED**.

### C. Plaintiff's Failure to Adequately Staff and Train JCDC Personnel Claim (Count II)

In Count II, Plaintiff asserts a claim against Defendants Jackson County and Director Piccinini for failure to adequately staff and train JCDC personnel. Plaintiff alleges Defendants' failure to adequately staff and train JCDC personnel resulted in Plaintiff being attacked two times (once as a sexual assault) on February 8, 2016, while in his cell and in the pod.

First, to the extent Plaintiff asserts this claim against Director Piccinini in his individual capacity, the Court finds Plaintiff fails to state a claim. Plaintiff alleges only that Director Piccinini was appointed as an assistant director of the county department of corrections. Supervisory liability based on a failure-to-train claim arises if the supervisor "directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee

10

caused a deprivation of constitutional rights." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (citation and quotation marks omitted). The supervisor must have been "deliberately indifferent to" or have "tacitly authorized the offending acts." *Id.* (citation and quotation marks omitted). "Because § 1983 liability 'requires a causal link to, and direct responsibility for, the deprivation of rights,' Plaintiff[] 'must allege specific facts' regarding [Director Piccinini]'s 'personal involvement in, or direct responsibility for,' the deprivation of [Plaintiff's] rights." *Samaha v. City of Minneapolis*, 525 F. Supp. 3d 933, 944 (D. Minn. Mar. 11, 2021).

Plaintiff alleges "Defendants . . . failed to adequately staff and train the JCDC personnel on duty on February 8, 2016, which resulted in the deprivation of [Plaintiff]'s constitutional rights" and were otherwise deliberately indifferent. (Doc. 14 at ¶ 150.) Plaintiff alleges no *facts* however, Director Piccinini was personally involved in the corrections officers' training and supervision, let alone that of the particular officers on duty on February 8, 2016. Plaintiff cannot assert a claim against Director Piccinini in his individual capacity solely because he was the acting director of the county department of corrections.

Moreover, even if Plaintiff alleged facts to establish there was a lack of adequate staff, training, and/or supervision on February 8, 2016 – which he does not do – his allegations "concern[s] a single instance in which inadequate staffing, training, and supervision resulted in his assault. More is required for section 1983 liability to attach." *Leal v. Wiles*, 734 F. App'x 905, 908 (5th Cir. 2018) (affirming district court's dismissal of claims against sheriff for failure to state a claim) (footnote citation omitted); *see also Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012) (supervisory liability under § 1983 rests on the supervisor having "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation") (citation and quotation marks omitted). Even though Plaintiff alleges he was attacked by other detainees two times, the attacks occurred on the same day. In this regard, Plaintiff alleges no facts Director Piccinini had notice that the training and/or supervision of the officers was inadequate in the short intervening period between the two attacks on February 8, 2016, or otherwise.

Second, to properly plead a claim for municipal liability against Defendant Jackson County, Plaintiff must plead facts that plausibly show "a municipal policy or custom was the 'moving force [behind] the constitutional violation.'" *Mettler*, 165 F.3d at 1204 (quoting *Monell*, 436 U.S. at 694). As stated above, "policy" means "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* A

"municipal custom" means (1) "[t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the government entity's employees" and (2) the policymaking officials are deliberately indifferent to such unconstitutional conduct or tacitly authorize such conduct after the officials have notice of the unconstitutional conduct. *Id.* (citation and quotation marks omitted).

The underlying constitutional violation Plaintiff claims in Count II concerns the physical and sexual assaults he suffered on February 8, 2016. Plaintiff pleads no facts, however, Director Piccinini or any policymaking official had notice of, were deliberately indifferent to (*see* § III.B.1 above), or tacitly authorized any conduct by JCDC personnel that directly caused or was "the moving force" behind the alleged constitutional violation. Moreover, Plaintiff alleges no *facts* from which one could reasonably infer JCDC was understaffed or the officers on duty were undertrained on February 8, 2016, causing Plaintiff to be attacked on that day. The task force report Plaintiff attached to his motion adds little factual support to his allegations here. The task force report does not either itself or through its content provide *facts* supporting an inference that the jail was understaffed and/or the officers were undertrained when Plaintiff was attacked or that such understaffing or undertraining was the moving force behind the two attacks Plaintiff endured on February 8, 2016. *See also Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). Therefore, Defendants Jackson County and Director Piccinini's motion to dismiss Count II for failure to state a claim is **GRANTED**.[3]

### D. Plaintiff's Failure to Intervene/Protect Claim (Count III)

Finally, in Count III, Plaintiff asserts a failure-to-intervene and failure-to-protect claim against Officer Okolo and Lieutenant Henderson regarding the physical and sexual assaults he suffered on February 8, 2016.[4] Plaintiff alleges Officer Okolo and Lieutenant Henderson's "duties

---

[3] Defendant Jackson County also argues to the extent Counts I and II seek punitive damages, such relief is barred because the county is immune from a claim of punitive damages under § 1983. Plaintiff concedes and does not oppose this argument. In *City of Newport v. Fact Concerns, Inc.*, 453 U.S. 247 (1981), the United States Supreme Court held in the context of a § 1983 claim, a municipality is immune from punitive damages. *Id.* at 271; *see also Jones v. Hope City Police Dep't*, No. 4:19-cv-04009, 2019 WL 3782823 (W.D. Ark. July 22, 2019) (granting defendant's motion to dismiss under Rule 12(b)(6) where defendant is immune from suit based on sovereign immunity), *adopted by*, 2019 WL 3781438 (W.D. Ark. Aug. 12, 2019); *Meyers v. Red Roof Inns, Inc.*, No. 4:15CV00393 ERW, 2015 WL 1650904, at *2 (E.D. Mo. April 14, 2015) (same). Defendant's motion to dismiss Plaintiff's claim for punitive damages against Jackson County is **GRANTED**.

[4] Plaintiff also asserts this claim against the fictitious defendants, John Does #1, #2, #3, and Jane Does #1, #2, and #3. These defendants are not parties to this motion to dismiss.

included physical checks" in the pod and monitoring the video cameras and were "tasked with establishing order and discipline in Pod J3F." (Doc. 14 at ¶¶ 172, 173.) Plaintiff alleges the first attack required "the deployment of the JCDC CERT members to restore order" in the pod. He also alleges that after the first attack, Officer Okolo and Lieutenant Henderson did not "grant[] [Plaintiff]'s request to be moved to a different Pod," "failed to perform any further patrols of Pod J3F (until bed check)," and "failed to monitor the video camera system." (*Id.* at ¶¶ 176-78.) Plaintiff alleges the plastic tool used to open the locked cell doors was "not hidden in any cell, but was kept in the Pod area, on the television" and was used by various detainees on February 8, 2016, to open their locked cell doors, other detainee's cell doors, and Plaintiff's locked cell door. Additionally, as to Officer Okolo, Plaintiff alleges Officer Okolo called Plaintiff a "Baby-Raper" in the presence of other members of Pod J3F prior to when Plaintiff was physically and sexually assaulted.

An unconstitutional failure-to-protect or failure-to-intervene claim under § 1983 in this instance requires Plaintiff to plead facts showing: (1) "an 'objectively, sufficiently serious' deprivation, meaning that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) that the defendant[s] w[ere] deliberately indifferent to the substantial risk of serious harm." *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (quoting and citing *Farmer*, 511 U.S. at 834). Under the facts pleaded above, the Court finds Plaintiff has sufficiently stated a claim showing he is plausibly entitled to relief in Count III. Accordingly, Officer Okolo and Lieutenant Henderson's motion to dismiss Count III for failure to state a claim is **DENIED**.

## IV. Conclusion

Therefore, for the reasons stated above, Defendants' motion to dismiss (Doc. 18) is **GRANTED in part** and **DENIED in part** as follows:

> (1) As to Count I – Defendants' motion to dismiss is **GRANTED** (1) as time-barred to the extent Plaintiff asserts a conditions-of-confinement claim arising before February 8, 2016; (2) as to Plaintiff's individual claims against Officer Okolo and Lieutenant Henderson; and (3) as to Plaintiff's claims for punitive damages against Defendant Jackson County. Defendants' motion to dismiss Count I is otherwise **DENIED**.
>
> (2) As to Count II – Jackson County and Director Piccinini's motion to dismiss is **GRANTED**.

(3) As to Count III – Officer Okolo and Lieutenant Henderson's motion to dismiss is **DENIED**.[5]

**IT IS SO ORDERED.**

                                                   s/ Roseann A. Ketchmark
                                                   ROSEANN A. KETCHMARK, JUDGE
                                                   UNITED STATES DISTRICT COURT

DATED: December 10, 2021

---

[5] At the end of his opposition to Defendants' motion to dismiss, Plaintiff requests leave to amend any counts for which the Court grants Defendants' motion to dismiss. (Doc. 22 at 38.) This request must be denied, however, because Plaintiff did not submit the proposed amendment along with his motion, as is required to preserve the right to amend. *Baker v. NNW, LLC*, No. 15-00222-CV-W-GAF, 2015 WL 12843827, at *4 (W.D. Mo. July 8, 2015) (citing *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985); *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1030 (8th Cir. 2011); *Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 880 (8th Cir. 2002)). Accordingly, Plaintiff's request for leave to amend is **DENIED without prejudice**.